IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DANIEL BOTNIK,

    Plaintiff

vs.

No. 3 11 0591
Judge _____
Magistrate _____

HEARINGPLANET, INC.,

JURY DEMAND

    Defendant

## COMPLAINT

1. Plaintiff is a citizen and resident of the Middle District of Tennessee. Plaintiff is considered to be Jewish Christian, which is also referred to as Hebrew Christian, Christian Jew, or Judaizer.

2. Defendant is a Tennessee corporation with its principal place of business located at 100 Westwood Place, Suite 300, Brentwood, Tennessee 37027. Defendant's resident agent for service of process is William H. Brownie, 100 Westwood Place, Suite 300, Brentwood, Tennessee 37027. Defendant is a ten year old Brentwood, Tennessee Internet company that sells medical hearing devices. Defendant has approximately 35 to 40 full-time employees on staff at its Brentwood,

Tennessee location. At all times pertinent, the relationship of employer/employee existed by and between defendant and plaintiff.

3. The wrongful acts and omissions complained of occurred in the Middle District of Tennessee.

4. This court has jurisdiction over the instant controversy by virtue of Title VII, which is codified at 42 USC 2000e *et seq.* This court also has pendent jurisdiction over plaintiff's claims asserted under the Tennessee Human Rights Act, which is codified at TCA 4-21-101 *et seq.* and the common law of Tennessee.

5. Plaintiff was hired by the defendant on April 1, 2009, as a sales rep/hearing consultant in its Brentwood, Tennessee office. As will be shown hereafter as relevant to this cause of action, plaintiff's national origin is Israeli; his ancestry is Russian/Hebrew.

6. Plaintiff was wrongfully terminated on April 9, 2010 for allegedly violating the defendant's anti-harassment policy with regard to two telephone conversations with customers wherein the subjects of religion, prayer, belief in God and national origin came into the conversation with plaintiff.

7. Plaintiff's conversations with both individuals, Ms. Faith English and Ms. Marcia Nebel, were congenial and self-respecting. Neither of these

customers/individuals filed a complaint, or verbally contacted the defendant's management concerning any harassment or displeasure regarding plaintiff's questions or discussions.

8. During the months of his employment Daniel Botnik was instructed about company protocols involving telephone sales and the importance of establishing rapport with prospective customers and existing clients by discussing "commonality" of interests to gain trust like they are "family and friends." Specifically, "HEARINGPLANET's Top 20% Best Practices" lists (item 11) "Talk to your patients like they are family and friends."

9. Plaintiff was further recommended to read and study "The Consumer Handbook on Hearing Loss and Hearing Aids," by Dr. Richard Carman. At page 91 of Dr. Carman's book it discusses the importance of "your provider (i.e., hearing consultant) taking the time to learn what [hearing] problems you have in meetings, groups, theatres…<u>and in your place of worship.</u>"

10. Plaintiff's termination on April 9, 2010 allegedly involved two telephone conversations between the plaintiff and his clients/patients. The first call at approximately 9:00AM CST was with a prospective patient, Ms. Faith English. During the conversation Ms. English told the

3
Case 3:11-cv-00591   Document 1   Filed 06/20/11   Page 3 of 10 PageID #: 3

plaintiff that she was interested in hearing aids so she would be able to "hear better at Church services and at her weekly Bible studies. Plaintiff readily admits that this discussion mentioned "God's goodness."

11. The second call was at approximately 11:00AM the same day and involved an existing customer, Marcia Nebel, who lived in the NJ/NY area with her husband Leo Nebel. The plaintiff had numerous conversations with the Nebel's over a three-month period concerning Mrs. Nebel's hearing condition and needs. Mrs. Nebel had become very comfortable with the plaintiff and was relating some personal adversity she had experienced involving her recent hospitalization. They had talked about a number of things during the course of the call when Marcia Nebel mentioned that she was from Russia. The plaintiff, whose ancestry was Russian/Jewish, recognized the Nebel name as Russian/Jewish. Historical archives established plaintiff's family to be from the region of "Moldova" (Russia). At this point, plaintiff asked Mrs. Nebel whether she was Jewish to which she replied that both she and her husband Leo were Jewish. They then discovered matters of common interest, or of "commonality," including the Abrahamic Blessing. Plaintiff viewed their discussions as rewarding and appropriate in every respect. He would further aver that management at

4

HEARINGPLANET did not receive any complaint of offensive conduct regarding plaintiff's inquiry or said discussion by either customer.

12. Shortly after this second customer call on April 9, 2010, at approximately 2:00-2:30PM, plaintiff was confronted by his direct supervisor Steve Eagon and another management person about Marcia Nebel's call and its religious content. Plaintiff was asked why he was talking about "those things." Plaintiff replied, "You mean about me being Jewish?" Eagon replied, "Yes, we don't talk about those things here, about religion." Plaintiff was immediately terminated with his separation papers and final check already processed by said Steve Eagon prior to this meeting.

13. Plaintiff would aver that he had received "religious" communications from his sales mentor at HEARINGPLANET dealing with prayer, abortion, and related matters with company emails. He would also state that he, along with other sales personnel, heard "religious talk" on sales calls by company employees without employment repercussions by management which were non-Jewish in nature.

14. Additionally, plaintiff would aver that the topics of conversation that were viewed by defendant's management's violations of their Harassment-Free Work Environment Policy were initiated by the

customers in one case, and in the natural denouement in the second case. Neither conversation was offensive to the respective customers in any fashion, nor inappropriate.

15. Plaintiff contends that the defendant's basis for his termination, and its position as related to the EEOC in December 2010, of his having violated the company's "Harassment-Free Work Environment Policy" anti-harassment policy was dissembling and fraudulent. This policy was enacted in January, 2010, after plaintiff's supervisor, Steve Eagon, sexually harassed a subordinate female employee during December 2009. At this time the President of HEARINGPLANET, INC. advised all company employees that the two employees were "under investigation" for their behavior. On January 4, 2010, the said Steve Eagon returned to his job as Vice-President/Sales-Audiology, apologizing for his behavior and asking "forgiveness" thereby retaining his position at HEARINGPLANET. The female victim of his actions left the company to do what President Bill Brownie termed "pursue other interests."

16. The aforesaid background for the company's new "Harassment-Free Work Environment Policy" at HEARINGPLANET, INC., the precise policy plaintiff was accused of violating, was not remotely applicable to

6
Case 3:11-cv-00591   Document 1   Filed 06/20/11   Page 6 of 10 PageID #: 6

any acts by the plaintiff that resulted in his firing. Disparity of treatment involving a violation of Title VII is based upon the facts that the defendant allowed and permitted other sales representatives, not members of plaintiff's protected class, to have conversations involving Christianity with customers but plaintiff's discussion of his Jewish heritage, *etc.*, led to his firing. Furthermore, the reason given for the termination, *i.e.*, discussing religious matters with customers during telephone discussions was nothing more than a pretext to disguise the real reason for his termination which was clearly discrimination based on religion and national origin. The acts by the defendant aforementioned were malicious, intentional, and in reckless disregard of plaintiff's rights under the law for the imposition of punitive damages.

17. Plaintiff further avers that his termination was directly and proximately caused by the two telephone conversations involving prayer and his Jewish commentary, thus resulting in his being discriminated against because of his religion (Jewish) and national origin (Israeli) in violation of the Civil Rights Act of 1964, as amended.

18. Plaintiff avers that the aforesaid pretext is based upon the fact that other non-Jewish employees outside his protected class were engaged in the

7

same type of religious conversations but were not fired or otherwise disciplined for doing so.

19. Further evidence of the defendant's dissimilation and malicious treatment of plaintiff was its attempt to prevent plaintiff's rightful entitlement to unemployment compensation by contesting his application for those benefits with the Tennessee Department of Labor, Division of Employment Security. HEARINGPLANET, INC. alleged that the plaintiff had violated its "Harassment-Free Work Environment Policy" by "engaging" in inappropriate conversations with regard to "offensive questions."

    Notwithstanding the fact that HEARINGPLANET, INC. knew or should have known that unemployment checks were critical to the plaintiff for the support of his family after plaintiff was fired, defendant argued that plaintiff was not entitled to unemployment benefits because of his violation of "a newly-enacted" policy titled "Harassment-Free Work Environment." This tactic was clearly misleading, duplicitous, and fraudulent. Defendant knew that this policy had been initiated because of the December, 2009 discovery of Mr. Egan's (plaintiff's supervisor) concupiscence in the workplace with a female employee, and was not remotely applicable to plaintiff's alleged infraction.

8

20. Plaintiff avers that these acts by defendant were intentional, malicious, and in reckless disregard of plaintiff's rights and as such require an award of punitive damages, as aforesaid.

21. Plaintiff avers that as a direct and proximate result of defendant's wrongful acts and omissions as aforesaid, he has suffered and continues to suffer severe mental and physical anguish and injuries.

**WHEREFORE AND FOR ALL OF WHICH** plaintiff sues defendant for $1,000,000.00 in compensatory damages including loss of income, back pay, front pay, mental suffering and loss of enjoyment of life and $1,000,000.00 in punitive damages, and for such other and general relief as he is deemed entitled to including but not limited to a reasonable attorney fee, reasonable discretionary expenses of litigation, and the costs of the cause. Plaintiff demands a jury to resolve the issues joined.

Respectfully submitted,

/s/ James L. Harris (TN BPR no. 014173)
/s/ Robert J. Shockey (TN BPR no. 2092)
2400 Crestmoor Road
Nashville, TN 37215
615-386-7143
Jhar401@comcast.net
Attorneys for plaintiff