IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

DANIEL BOTNIK,

    Plaintiff,

v.                                      Docket No. 3:11-cv-00591
                                       Jury Demand

HEARINGPLANET INCORPORATED,   Campbell/Knowles

    Defendant.

## CASE MANAGEMENT ORDER

The parties, by and through the undersigned counsel and pursuant to Local Rule 16.01, respectfully submit the following Proposed Case Management Order.

**A.**     **Status of Service of Process and Responsive Pleadings**.

Service of process has been obtained on the defendant

**B.**     **Basis on Which Jurisdiction Is Invoked**.

This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., the Tennessee Human Rights Act, T.C.A. 4-21-101 et seq. and the common law of the State of Tennessee.

Venue is proper in that the alleged acts complained of occurred within the confines of the jurisdiction of this Court.

**C.**     **The Parties Theories of the Case and Claims and Defenses.**

    1.     <u>Plaintiff's theories and claims</u>. Plaintiff was hired by the defendant on April 1, 2009, as a sales rep/hearing consultant in its Brentwood, Tennessee office. As will be shown hereafter as relevant to this

cause of action, plaintiff's national origin is Israeli; his ancestry is Russian/Hebrew.

Plaintiff was wrongfully terminated on April 9, 2010 for allegedly violating the defendant's anti-harassment policy with regard to two telephone conversations with customers wherein the subjects of religion, prayer, belief in God and national origin came into the conversation with plaintiff. Plaintiff's conversations with both individuals, Ms. F. E. and Ms. M. N., were congenial and self-respecting. Neither of these customers/individuals filed a complaint, or verbally contacted the defendant's management concerning any harassment or displeasure regarding plaintiff's questions or discussions.

During the months of his employment Daniel Botnik was instructed about company protocols involving telephone sales and the importance of establishing rapport with prospective customers and existing clients by discussing "commonality" of interests to gain trust like they are "family and friends." Specifically, "HEARINGPLANET's Top 20% Best Practices" lists (item 11) "Talk to your patients like they are family and friends." Plaintiff was further recommended to read and study "The Consumer Handbook on Hearing Loss and Hearing Aids," by Dr. Richard Carman. At page 91 of Dr. Carman's book it discusses the importance of "your provider (i.e., hearing consultant) taking the time to learn what

[hearing] problems you have in meetings, groups, theatres…<u>and in your place of worship.</u>"

Plaintiff's termination on April 9, 2010 allegedly involved two telephone conversations between the plaintiff and his clients/patients. The first call at approximately 9:00AM CST was with a prospective patient, Ms. F. E. During the conversation Ms. E. told the plaintiff that she was interested in hearing aids so she would be able to "hear better at Church services and at her weekly Bible studies. Plaintiff readily admits that this discussion mentioned "God's goodness." The second call was at approximately 11:00AM the same day and involved an existing customer, M. N., who lived in the NJ/NY area with her husband L. N. The plaintiff had numerous conversations with the N.'s over a three-month period concerning Mrs. N.'s hearing condition and needs. Mrs. N. had become very comfortable with the plaintiff and was relating some personal adversity she had experienced involving her recent hospitalization. They had talked about a number of things during the course of the call when M. N. mentioned that she was from Russia. The plaintiff, whose ancestry was Russian/Jewish, recognized the N. name as Russian/Jewish. Historical archives established plaintiff's family to be from the region of "Moldova" (Russia). At this point, plaintiff asked Mrs. N. whether she was Jewish to which she replied that both she and her husband L. were Jewish. They then discovered matters of common interest,

or of "commonality," including the Abrahamic Blessing. Plaintiff viewed their discussions as rewarding and appropriate in every respect. He would further aver that management at HEARINGPLANET did not receive any complaint of offensive conduct regarding plaintiff's inquiry or said discussion by either customer. Shortly after this second customer call on April 9, 2010, at approximately 2:00-2:30PM, plaintiff was confronted by his direct supervisor Steve Eagon and another management person about M. N.'s call and its religious content. Plaintiff was asked why he was talking about "those things." Plaintiff replied, "You mean about me being Jewish?" Eagon replied, "Yes, we don't talk about those things here, about religion." Plaintiff was immediately terminated with his separation papers and final check already processed by said Steve Eagon prior to this meeting.

Plaintiff would aver that he had received "religious" communications from his sales mentor at HEARINGPLANET dealing with prayer, abortion, and related matters with company emails. He would also state that he, along with other sales personnel, heard "religious talk" on sales calls by company employees without employment repercussions by management which were non-Jewish in nature. Additionally, plaintiff would aver that the topics of conversation that were viewed by defendant's management's violations of their Harassment-Free Work Environment Policy were initiated by the customers in one case, and in the natural

denouement in the second case. Neither conversation was offensive to the respective customers in any fashion, nor inappropriate.

Plaintiff contends that the defendant's basis for his termination, and its position as related to the EEOC in December 2010, of his having violated the company's "Harassment-Free Work Environment Policy" anti-harassment policy was dissembling and fraudulent. This policy was enacted in January, 2010, after plaintiff's supervisor, Steve Eagon, sexually harassed a subordinate female employee during December 2009. At this time the President of HEARINGPLANET, INC. advised all company employees that the two employees were "under investigation" for their behavior. On January 4, 2010, the said Steve Eagon returned to his job as Vice-President/Sales-Audiology, apologizing for his behavior and asking "forgiveness" thereby retaining his position at HEARINGPLANET. The female victim of his actions left the company to do what President Bill Brownie termed "pursue other interests." The aforesaid background for the company's new "Harassment-Free Work Environment Policy" at HEARINGPLANET, INC., the precise policy plaintiff was accused of violating, was not remotely applicable to any acts by the plaintiff that resulted in his firing.

Disparity of treatment involving a violation of Title VII is based upon the facts that the defendant allowed and permitted other sales representatives, not members of plaintiff's protected

class, to have conversations involving Christianity with customers but plaintiff's discussion of his Jewish heritage, *etc.,* led to his firing. Furthermore, the reason given for the termination*, i.e.,* discussing religious matters with customers during telephone discussions was nothing more than a pretext to disguise the real reason for his termination which was clearly discrimination based on religion and national origin. The acts by the defendant aforementioned were malicious, intentional, and in reckless disregard of plaintiff's rights under the law for the imposition of punitive damages.

Plaintiff further avers that his termination was directly and proximately caused by the two telephone conversations involving prayer and his Jewish commentary, thus resulting in his being discriminated against because of his religion (Jewish) and national origin (Israeli) in violation of the Civil Rights Act of 1964, as amended.

Plaintiff avers that the aforesaid pretext is based upon the fact that other non-Jewish employees outside his protected class were engaged in the same type of religious conversations but were not fired or otherwise disciplined for doing so.

Further evidence of the defendant's dissimilation and malicious treatment of plaintiff was its attempt to prevent plaintiff's rightful entitlement to unemployment compensation by contesting his application for those benefits with the Tennessee Department of Labor, Division of

Employment Security. HEARINGPLANET, INC. alleged that the plaintiff had violated its "Harassment-Free Work Environment Policy" by "engaging" in inappropriate conversations with regard to "offensive questions."

Notwithstanding the fact that HEARINGPLANET, INC. knew or should have known that unemployment checks were critical to the plaintiff for the support of his family after plaintiff was fired, defendant argued that plaintiff was not entitled to unemployment benefits because of his violation of "a newly-enacted" policy titled "Harassment-Free Work Environment." This tactic was clearly misleading, duplicitous, and fraudulent. Defendant knew that this policy had been initiated because of the December, 2009 discovery of Mr. Egan's (plaintiff's supervisor) concupiscence in the workplace with a female employee, and was not remotely applicable to plaintiff's alleged infraction.

Plaintiff avers that these acts by defendant were intentional, malicious, and in reckless disregard of plaintiff's rights and as such require an award of punitive damages, as aforesaid. Plaintiff avers that as a direct and proximate result of defendant's wrongful acts and omissions as aforesaid, he has suffered and continues to suffer severe mental and physical anguish and injuries.

    2.    <u>Theories and defenses of Defendant</u>.

Defendant denies Plaintiff's claims and denies Plaintiff is entitled to any relief sought in his Complaint. All decisions with respect to Plaintiff

were based on legitimate, non-discriminatory reasons without regard to any protected category or status of any individual or group. Plaintiff's claims are baseless and should be dismissed with prejudice, with costs and attorneys' fees taxed against Plaintiff.

**D.  Contested Issues of Fact and Law.**

All legal and factual matters remain at issue in this litigation.

**E.  Witnesses.**

The parties anticipate that fact witnesses will include Plaintiff and one or more of Defendant's employees

**F.  Need for Counterclaims, Cross-Claims, Third-Party Claims, Amendments to the Pleadings, Joinder and/or Consideration of Class Action.**

Although the parties do not presently anticipate any counterclaims or cross-claims, the parties may pursue any of the above in accordance with the Federal Rules of Civil Procedure. Any motions to amend pleadings or to add parties shall be filed on or before **September 30, 2011.**

**G.  Initial Disclosures and Staging of Discovery.**

1.  Discovery is not stayed during dispositive motions, unless otherwise ordered by the Court. No motions concerning discovery issues are to be filed until the parties have conferred in good faith in an attempt to resolve those issues. The parties may contact the Magistrate Judge's office and schedule a telephone conference prior to filing any discovery motions.

2. Initial disclosures pursuant to Rule 26(a)(1) shall be exchanged within 30 days of the case management conference.

3. All discovery must be completed no later than **February 29, 2012.**

4. Discovery-related motions (except for motions related to discovery pertaining to experts) shall be filed by **February 29, 2012**, only after the parties have conferred in good faith as provide above.

5. The parties shall disclose any experts and provide opposing parties with a copy of the expert's report and any other information required by Rule 26 of the Federal Rules of Civil Procedure within the time frame required by that rule. Depositions of experts shall be completed no later than seventy-five (75) days before trial. Plaintiff shall declare his experts on or before June 15, 2012. Defendant shall declare its experts on or before July 27, 2012.

H. **Filing of Dispositive Motions.**

The deadline for filing dispositive motions is **March 31, 2012.** Responses shall be due on or before 30 days after the filing of the Motion. Any replies to a response to a dispositive motion shall be filed on or before 15 days after the filing of the Response and shall be limited to even (7) pages.

I. **Settlement Prospects.**

The parties have not attempted settlement at this time.

**J.     Subsequent Case Management Conference.**

A subsequent case management conference or a telephone conference shall be held if so desired by the parties and so approved by the Court

**K.     Trial Date.**

The parties estimate that this trial will take approximately two (2) to three (3) days, depending upon the issues that remain after the completion of discovery and dispositive motions. The target trial date is September 18, 2012.
.

**It is SO ORDERED.**

Date: _____

_____
E. CLIFTON KNOWLES
UNITED STATES MAGISTRATE JUDGE


SUBMITTED FOR ENTRY BY:

s/ James L. Harris, (TN BPR No. 014173)
Attorney for Plaintiff
2400 Crestmoor Road
Nashville, TN 37215
(615) 386-7143 (telephone)
(615) 297-6855 (facsimile)

s/ William T. Fiala
William T. Fiala (BPR No. 022788)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
(615) 244-6380 (telephone)
(615) 244-6804 (facsimile)