IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANIEL BOTNIK | ) |
| | ) |
| v. | ) NO. 3-11-0591 |
| | ) JUDGE CAMPBELL |
| HEARINGPLANET, INC. | ) |

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 18). For the reasons stated herein, Defendant's Motion is GRANTED.

FACTS

Plaintiff has sued Defendant, his former employer, for employment discrimination based upon Plaintiff's race, national origin and religion. Plaintiff contends that he is Jewish Christian (also known as Hebrew Christian, Christian Jew or Judaizer) and his national origin is Israeli/Russian/Hebrew. Plaintiff claims that he was wrongfully terminated for allegedly violating Defendant's Harassment-Free Work Environment Policy with regard to two telephone conversations he had with customers wherein the subjects of religion, prayer, belief in God and national origin came into the conversation. Plaintiff's Complaint alleges claims under Title VII and the Tennessee Human Rights Act ("THRA").

Defendant sells medical hearing devices, and Plaintiff was hired as a sales rep/hearing consultant in Defendant's Brentwood, Tennessee office. Plaintiff argues that during his employment with Defendant, he was instructed by Defendant about the importance of establishing rapport with prospective customers and existing clients by discussing commonality of interests to gain trust "like they are family and friends." Plaintiff also contends that Defendant advised him to take the time to

learn what hearing problems clients had in meetings, groups, theaters and places of worship. Plaintiff's Complaint alleges that the subject telephone conversations were appropriate in every respect and that neither customer complained to Defendant of offensive or inappropriate conduct. Yet, Plaintiff avers, Defendant fired him on the same day, based upon his religion and national origin.

Defendant's Harassment-Free Work Environment Policy provides that it is the policy of Defendant for employees to have a working environment free from all forms of unlawful discrimination and conduct that can be considered harassing, coercive or disruptive. Further, any behavior that is not welcomed, that is personally offensive, that debilitates morale and therefore interferes with work effectiveness, may result in disciplinary action up to and including dismissal. Docket No. 18-1, p. 48.

Defendant claims that four of Plaintiff's co-workers complained to Plaintiff and then to Plaintiff's supervisor, Mr. Eagon, that Plaintiff engaged in an inappropriate telephone conversation with a customer[1] and that conversation made the co-workers feel uncomfortable. Mr. Eagon investigated the complaints by listening to the recorded phone call. During that call, Plaintiff asked the customer about her national origin and asked whether her husband was Jewish. Defendant contends that Mr. Eagon believed that Plaintiff's conduct was inappropriate and constituted a violation of company policy. Mr. Eagon discussed his concerns with Defendant's President, Mr. Brownie, and they listened together to the recorded conversation.

---

[1] Although Plaintiff mentions two telephone calls, Defendant focuses solely on the second call in its reason for Plaintiff's firing.

Mr. Brownie agreed that Plaintiff's conversation with the customer was inappropriate and violated Defendant's policy. Specifically, Defendant asserts that Mr. Eagon and Mr. Brownie decided to fire Plaintiff based upon his poor judgment in asking the customer inappropriate questions regarding the customer's national origin and religion that made Plaintiff's co-workers uncomfortable and violated company policy.

Defendant has moved for summary judgment, contending that Plaintiff cannot establish a *prima facie* case of wrongful discrimination and, even if he could, Plaintiff cannot show that Defendant's legitimate, nondiscriminatory reason for his firing was pretextual.

SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence

3

has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

NATIONAL ORIGIN AND RELIGIOUS DISCRIMINATION [2]

To establish a *prima facie* case of discrimination, in the absence of direct evidence of discrimination, the Plaintiff must show: (1) that he was in a protected class or minority;[3] (2) that he was qualified for the position; (3) that despite these qualifications, he was subjected to an adverse employment decision; and (4) that he was replaced by someone outside of the protected class or that similarly situated non-protected employees were treated more favorably. *Evans v. Walgreen Co.*, 813 F.Supp.2d 897, 918 (W.D. Tenn. 2011); *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

Defendant argues that Plaintiff cannot show that either of the two decision-makers (Eagon or Brownie) knew of Plaintiff's race, national origin or religion. Plaintiff has sufficiently created a genuine issue of material fact as to this assertion by showing that he discussed his religion with Eagon at a Bible study and in an e-mail, plus both Eagon and Brownie listened to the telephone call at issue, wherein Plaintiff explained that his name is Jewish. Although the Court does not accept Plaintiff's assertion that "inferences" alone establish this fact, a reasonable jury could find that at least one of these decision-makers reasonably should have known Plaintiff's religion and race.

---

[2] An analysis of claims under the THRA is the same as under Title VII of the Federal Civil Rights Act. *Chattman v. Toho Tenax America, Inc.*, 686 F.Supp. 2d 754, 762 (E.D. Tenn. 2010); *Bredesen v. Tennessee Judicial Selection Commission*, 214 S.W.3d 419, 430 (Tenn. 2007).

[3] Although Plaintiff's assertions do not claim one specific religion or one country of national origin, the Court will assume, for purposes of this Motion, that Plaintiff is a member of a protected class.

Defendant does not dispute that Plaintiff was qualified for the position or that he was subject to an adverse employment decision.

Defendant argues that Plaintiff cannot establish the fourth element, that someone outside the protected class who is similarly situated was treated more favorably than he. To be similarly situated, the individuals with whom Plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 393 (6th Cir. 2008) (citing *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992)). The Sixth Circuit has held that the *Mitchell* factors should not be rigidly applied. *Jackson*, 518 F.3d at 394. The appropriate test is to look at those factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects. *Id*.

Plaintiff compares himself to his supervisor, Mr. Eagon, and a co-worker, Melissa Rogers. Plaintiff asserts that Eagon and Rogers were treated more favorably than Plaintiff when they violated company rules and regulations by being in a romantic relationship. Plaintiff claims that Eagon was suspended without pay but reinstated and Rogers was asked to resign.

The alleged misconduct of Eagon and Rogers is totally different from the alleged misconduct of Plaintiff, however. Plaintiff's alleged misconduct involved a customer, and Defendant contends it resulted in complaints from four co-workers who were uncomfortable. Plaintiff has not disputed that the behavior of Eagon and Rogers did not involve customers and did not result in complaints from co-workers. The alleged misconduct of Eagon and Rogers occurred outside the office; Plaintiff's alleged misconduct occurred at the office, in the course and scope of Plaintiff's

5

employment.  Moreover, Plaintiff has not identified the race, national origin or religion of Eagon and Rogers.  The Court finds that these differentiating or mitigating circumstances distinguish their misconduct and the employer's treatment of them.

Plaintiff also contends that others in the workplace were involved in regular religious discussions of a Christian nature through company e-mails and chats and were not fired.  For example, Plaintiff testified that he attended a Christian Bible study and prayer time with co-workers before work at McDonald's once a week.  Docket No. 18-1, pp. 6-8.  Plaintiff stated that Defendant allowed other employees to talk about Christianity fully and freely at work and with customers. *Id*., pp.30-31and 39-41.[4]  Plaintiff testified that he received religious communications from his sales mentor at work which dealt with prayer, abortion and related matters and that he, along with other sales personnel, heard non-Jewish "religious talk" on sales calls by company employees without employment repercussions by management.  Docket No. 26-1, ¶ 12; *see also id.*, ¶ 17.[4]

Plaintiff has not presented evidence that Defendant's management was aware of these conversations or that these discussions involved customers or caused complaints within the company.  Moreover, Plaintiff has admitted that he does not know the national origin of these employees.  Docket No. 18-1, p. 38.  Plaintiff has also admitted that neither Eagon or Brownie was aware of any employees other than Plaintiff who asked a customer about the customer's national origin or religion.  Docket No. 27, ¶ 29.

---

[4] " I think they [other employees] were protected because of their Christianity and I was singled out for being Jewish and that's why I was fired."  Docket No. 18-1, pp. 37-38.

[4] Plaintiff's citations for these assertions are solely to his own testimony.

The Court finds that Plaintiff has failed to show that similarly situated employees were treated more favorably. Thus, Plaintiff has failed to establish the fourth element of his *prima facie* case.

Even if Plaintiff had established a *prima facie* case, Defendant has asserted a legitimate, non-discriminatory reason for its actions - that Plaintiff discussed religious and national origin matters with a customer on a telephone call, in violation of Defendant's Anti-Harassment Policy.

The burden then shifts to Plaintiff to show that Defendant's reason was a pretext for discrimination. *Sybrandt v. Home Depot U.S.A., Inc.*, 560 F.3d 553, 557-58 (6th Cir. 2009).[5] A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact, (2) did not actually motivate the action; or (3) were insufficient to warrant the action. *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012).

Plaintiff's attack on Defendant's proffered reason is essentially an attack on the credibility of the decision. Where the employer can demonstrate an honest belief in its proffered reason, the inference of pretext is not warranted. *Seeger*, 681 F.3d at 285. The employer's proffered reason is considered honestly held where the employer can establish it reasonably relied on particularized facts that were before it at the time the decision was made. *Id*. An employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question and fails to create a genuine issue of material fact. *Id*. A plaintiff is required to show more than a dispute over the facts upon which the discharge was based. *Id*.

---

[5] Throughout this burden-shifting approach, Plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate. *Sybrandt*, 560 F.3d 557-58.

Plaintiff does not dispute the accuracy of Defendant's factual basis for the decision - that he asked a customer about her religion and whether her husband was Jewish and that several co-workers complained. Plaintiff argues that his conversation with the customer was appropriate, simply disagreeing with Defendant's business judgment. Plaintiff believes that his conduct did not merit the firing. As long as the employer held an honest belief in its proffered reason, however, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial or baseless. *Seeger*, 681 F.3d at 285-86.

Defendant's decision was made after more than one complaint from Plaintiff's co-workers. Plaintiff's supervisor actually listened to the recorded phone call. Plaintiff's supervisor consulted with his supervisor, who also listened to the recorded phone call. Their decision to terminate Plaintiff's employment involved a reasoned decision, even if Plaintiff disagrees with it.

Alternatively, even if Plaintiff could establish a *prima facie* case, he has not shown that Defendant's legitimate, nondiscriminatory reason for his firing was a pretext for discrimination.

## CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment (Docket No. 18) is GRANTED, and this action is DISMISSED.

IT IS SO ORDERED.

*[signature]*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE